# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

CHRISTINA TORRES,

        *Plaintiff,*

        v.

CHRISTINE E. WORMUTH,

        *Defendant.*

Civil Action No. 24‑2652 (SLS)

Judge Sparkle L. Sooknanan

## MEMORANDUM OPINION

Captain Christina Torres is an Army chaplain who received a reprimand for misconduct related to her treatment of soldiers under her command. She applied to the Army Board for Correction of Military Records to have the reprimand removed from her personnel file, and the Board voted to grant her relief. But the Deputy Assistant Secretary of the Army overturned this decision in a single-paragraph explanation. Captain Torres sued to challenge the Deputy Assistant Secretary's decision, and both parties have moved for summary judgment. The Court grants summary judgment in favor of Captain Torres because the Deputy Assistant Secretary failed to explain why he disagreed with the Board, in violation of the Administrative Procedure Act.

## BACKGROUND

### A.    Statutory and Regulatory Background

"The Secretary of a military department may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1). "[S]uch corrections shall be made by the Secretary acting through boards of civilians of the executive part of th[e relevant] military department[.]" *Moskowitz v. Driscoll*, No. 23-cv-2461, 2025 WL 901241, at *4 (D.D.C. Mar. 25, 2025) (quoting 10 U.S.C. § 1552(a)(1)).

The Department of the Army Suitability Evaluation Board (DASEB) "is the initial appeal authority and makes recommendations for removal, alteration, or transfer of unfavorable information entered in" an individual's Army Military Human Resource Record. Army Reg. 600-37 ¶ 7-1. A letter of reprimand is an example of "unfavorable information." *Id.*, Glossary § II. The DASEB is a "standing, continuous board" that "typically consists of officers in the grade of colonel" whose voting members on any case will always outrank the applicant. *Id.* ¶ 6-1(a). "A quorum of three members will be actively involved in every step of [a] case's adjudication," and all decisions are made by majority vote. *Id.* ¶ 6-1(b).

"The DASEB will presume that once an official document has been properly filed in [the Army Military Human Resource Record], it is administratively correct and was filed pursuant to an objective decision made by a competent authority." *Id.* ¶ 6-3(b)(2). The burden of proof rests on the applicant to show by "clear and convincing evidence" either (1) that "the document is either untrue or unjust, in whole or in part, thereby warranting its alteration or removal from the [Record]," or (2) that it "has served its intended purpose, and it is in the best interest of the Army to transfer it to the restricted portion of the [Record]." *Id.*

After exhausting all administrative appeals, including an appeal to the DASEB, individuals in the Army may apply to the Army Board for Correction of Military Records (ABCMR) "to correct an error or remove an injustice." *Id.* ¶ 7-7. "The ABCMR consists of civilians regularly employed in the executive part of the [Army] who are appointed by the Secretary of the Army and serve on the ABCMR as an additional duty." 32 C.F.R. § 581.3(c)(1). "A panel consisting of at least three ABCMR members will consider each application that is properly brought before it." *Id.* § 581.3(e)(3)(i). The panel then decides "[w]hether the preponderance of the evidence shows that an error or injustice exists and . . . [i]f so, what relief is appropriate." *Id.* § 581.3(e)(3)(iii). Like

the DASEB, "[t]he ABCMR begins its consideration of each case with the presumption of administrative regularity." *Id.* § 581.3(e)(2). But if it is "persuaded that material error or injustice exists, and that sufficient evidence exists on the record," it will "direct or recommend changes in military records to correct the error or injustice." *Id.* § 581.3(b)(4)(ii).

ABCMR decisions are often considered final. *See id.* § 581.3(g)(2)(i). But the Secretary of the Army may still "direct such action as he or she deems proper in each case." *Id.* § 581.3(g)(3)(i). "Cases returned to the Board for further consideration will be accompanied by a brief statement of the reasons for such action." *Id.* And "[i]f the Secretary does not accept the ABCMR's recommendation, adopts a minority position, or fashions an action that he or she deems proper and supported by the record, that decision will be in writing and will include a brief statement of the grounds for denial or revision." *Id.* The Deputy Assistant Secretary may exercise this authority on behalf of the Secretary. *See* Army Reg. 600-37 ¶ 6-1(e); *see, e.g.*, *Moskowitz*, 2025 WL 901241, at *5 ("[T]he Deputy Assistant Secretary of the Army overturned the Corrections Board's recommendation."); *Brown v. Wormuth*, No. 17-cv-2112, 2021 WL 3886303, *1 (D.D.C. Aug. 31, 2021) ("[T]he Deputy Assistant Secretary of the Army . . . rejected the ABCMR's recommendation.").

### B.    Factual Background

In late 2016, Christina Torres was appointed to be a captain in the Regular Army Chaplain Corps. Admin. R. (AR) at 1045, ECF No. 18. A few years later, in January 2020, she reported to the 101st Airborne Division for an assignment as the Battalion Chaplain for the Headquarters Battalion. *See id.* at 1079; *see also* Def.'s Mot. Summ. J. at 2, ECF No. 10; Pl.'s Cross-Mot. Summ. J. at 5, ECF No. 11. One of her duties was to supervise Sergeant Emonne Carnell,

a Religious Affairs Specialist. *See* AR at 318; *see also* Def.'s Mot. Summ. J. at 2; Pl.'s Cross-Mot. Summ. J. at 5–6.

Captain Torres alleges that Sergeant Carnell "routinely failed to complete the tasks which [Captain Torres], as her supervisor, assigned to her," was "disrespectful and insubordinate," and "did not conform to [Captain Torres's] views regarding how a soldier should perform, nor was she capable of fulfilling the standard expected of a Religious Affairs Specialist in general." Compl. ¶¶ 12–16, ECF No. 1. Captain Torres claims that she "felt responsible for [Sergeant Carnell] not only as her supervisor but also on a spiritual level," so she "attempted to correct [Sergeant Carnell's] inappropriate behavior." *Id.* ¶ 17. According to Captain Torres, this led to a "strained relationship," which "culminated in an incident" on October 17, 2021, where she "became extremely frustrated and temporarily lost her composure with [Sergeant Carnell]." *Id.* ¶ 21. Captain Torres claims this was because of Sergeant Carnell's "continue[d] failure to meet [her] expectations." *Id.* ¶ 22. But Sergeant Carnell once testified that she believed the outburst followed her completion of a task as directed. *See* AR at 48.

Sergeant Carnell detailed her side of the story: "[Captain Torres] came in and just started screaming in my face about not having toys set up and I was confused on what she was talking about because, we did exactly what she asked. She just kept getting closer and closer to me and screaming in my face the whole time to the point the children were starting to notice." *Id.* And this allegation tracks with how Sergeant Carnell has described her experience more broadly. She has said that Captain Torres created "a hostile work environment" where she was "never given any guidance or direction" or any "mentorship or counseling[]." *Id.* at 47–48. She has also claimed that she felt "micromanaged" and "unsafe." *Id.* at 49.

4

On October 28, 2021, Captain Torres's Headquarters Battalion Commander appointed an investigating officer to "conduct an administrative investigation" into whether Captain Torres "bullied, harassed, and engaged in counterproductive leadership behavior" toward Sergeant Carnell, and whether Captain Torres "engaged in behaviors that discriminated against" Sergeant Carnell "based on her race, religion, gender, or sexual orientation." *Id.* at 419. And on November 6, 2021, a higher commander re-appointed the investigating officer after it was discovered that Captain Torres might have made a comment to the Headquarters Battalion Commander during a counseling session, presumably making him a witness. *See id.* at 374; *see also* Def.'s Mot. Summ. J. at 3–4; Pl.'s Cross-Mot. Summ. J. at 7.

On November 23, 2021, while the investigation was ongoing, Captain Torres emailed her Division Chaplain Command Team to complain of "repeated patterns of toxicity that [Sergeant Carnell] displays" and to share that she "strongly believe[s] her next Chaplain will not be served well." AR at 9, 298. She concluded: "I am recommending that she not be retained in the chaplaincy branch." *Id.* at 298. Shortly thereafter, the investigator was directed to also look into whether Captain Torres had "engaged in . . . additional misconduct, including . . . reprisal against [Sergeant] Carnell, and whether [Captain Torres] engaged in any wrongful acts with the intent to influence or impede the outcome of this investigation." *Id.* at 1198; *see also id.* at 196.

On December 9, 2021, the investigator produced a nearly six-page report of findings and recommendations. *See id.* at 373–78. This report found by a preponderance of the evidence that Captain Torres "demonstrate[d] counterproductive leadership" during both the October 17, 2021, incident, in which she failed to "maintain her temper and behave[d] erratically," and another incident, wherein she "forcibly demand[ed] her subordinate to share her personal feelings to the point where her subordinate [was] visibly disturbed." *Id.* at 376–77. The report also found that

Captain Torres "violated her Commander's Retaliation and Reprisal Prevention Plan" when she sent the email complaining about Sergeant Carnell. *Id.* at 377.

On February 2, 2022, Captain Torres responded to these findings with her own arguments and evidence. *See id.* at 383–401. But on February 24, 2022, Lieutenant Colonel Crawford told a paralegal that he "concur[red] with the [investigator's] recommendation to relieve [Captain Torres] for her conduct" after the paralegal said she would forward his assessment to Colonel Moffett. *Id.* at 372; *see also id.* at 12. Colonel Moffett then advised the Commanding General of the 101st Airborne Division, Major General Joseph McGee, that he also "concur[red] with the [investigator's] findings that [she] engaged in counterproductive leadership and reprisal," but he also noted that he believed there was "insufficient evidence to find that [she] engaged in behavior that constitutes and Equal Opportunity violation, including bullying, harassment, and discrimination," and that there was "insufficient evidence to find that she intended to influence the investigation." *Id.* at 371; *see also* Def.'s Mot. Summ. J. at 6; Pl.'s Cross-Mot. Summ. J. at 9–10.

Finally, on April 15, 2022, Major General McGee approved the investigator's recommendation to relieve Captain Torres for cause. *See* AR at 1133; *see also id.* at 377; Def.'s Mot. Summ. J. at 6; Pl.'s Cross-Mot. Summ. J. at 10. He also issued a memorandum of reprimand that stated:

> You are reprimanded for your inexcusable conduct for failing to treat Soldiers with proper dignity and respect in accordance with Army Regulation (AR) 600-20, and engaging in counterproductive leadership as defined in AR 600-100. An AR 15-6 investigation revealed you created a counterproductive work environment by failing to communicate to your Soldiers and setting unrealistic timelines for them to complete vague tasks. You disrespected and belittled your subordinates in front of others. Your behavior caused your Chain of Command to lose faith in your ability to care for Headquarters and Headquarters Battalion Soldiers in an unbiased manner. Additionally, on 23 November 2021, you reprised against a Soldier who made a complaint against you by requesting a formal meeting with the 101st Airborne Division Chaplain Command Team to discuss how the Soldier would not

serve their next Chaplain well. You also stated that the Soldier should not be retained in the Chaplaincy Branch.

AR at 331. On April 27, 2022, Captain Torres "was issued a memorandum for the Notice of Intent to Relieve," notifying her "that her command was considering taking action to relieve her from her position[.]" *Id.* at 13. But then Captain Torres submitted a response, wherein she acknowledged that her "behavior was a major distraction for many individuals throughout the entire chain of command" and that "[t]he incidents of disrespect, counterproductive leadership, unrealistic demands, reprisal, and failure to set a proper example for subordinates not only fail to meet Army standards, but also [her] own personal vision of servant leadership." *Id.* at 336; *see also id.* at 334 (saying the same in response to the reprimand); *id.* at 14 (calling her response to the Notice of Intent to Relieve "effectively a copy" of her response to the reprimand). And it appears from the record that she was never actually relieved for cause. *See* Def.'s Mot. Summ. J. at 7; Pl.'s Cross-Mot. Summ. J. at 11.

"On an unspecified date," Major General McGee directed the reprimand to be "permanently placed in her" record. AR at 14. Army regulations require "an officer's record to be reviewed for consideration of terminating appointment" whenever "[a]dverse information [is] filed in the [official military personnel file]." Army Reg. 600-8-24 ¶ 4-2(c)(5). So on October 30, 2022, acting pursuant to that requirement, *see* AR at 41, Major General McGee appointed a Board of Inquiry to complete that review, *id.* at 37; Def.'s Mot. Summ. J. at 8; Pl.'s Cross-Mot. Summ. J. at 12. The Board of Inquiry convened on January 11, 2023, to consider evidence and testimony concerning whether Captain Torres should remain as an Army officer. *See* AR at 41–60. It ultimately concluded that she "should not be separated from service and should be retained and transferred or reassigned." *Id.* at 60. Major General McGee approved this recommendation. *Id.* at 35.

On April 14, 2023, Captain Torres applied to the DASEB, asking for her reprimand to be removed from her Military Human Resource Record or, in the alternative, to strike the reprisal language from the reprimand. *See id.* at 506–09, 1274. On May 9, 2023, the DASEB decided by unanimous vote to decline her requested relief because "[t]he evidence presented d[id] not clearly and convincingly establish that the document under consideration [was] untrue or unjust." *Id.* at 1273. On May 18, 2023, the DASEB ordered that the "appeal correspondence and record of proceedings should be added to the restricted portion of the [record]." *Id.* at 1272.

On June 29, 2023, Captain Torres applied to the ABCMR, once again requesting that her reprimand be removed or, in the alternative, for it to be amended to exclude language about reprisal. *Id.* at 23–26. And this time, she succeeded. On February 27, 2024, the ABCMR recommended that the reprimand be removed from her record. *Id.* at 5–16. It relied on eight factors to conclude that the continued inclusion of the reprimand in her file would be unjust: (1) she "expressed remorse"; (2) she "took responsibility for her actions"; (3) the Board of Inquiry "recommended her retention in the Army"; (4) the DASEB "found sufficient evidence to transfer the [reprimand] to the restricted section of her [personnel file]"; (5) her "performance"; (6) she had "potential"; (7) the reprimand was "harsh"; and (8) she had made a "persuasive argument" in her application. *Id.* at 16. Both Parties agree that the fourth factor was mistaken. *See* Pl.'s Cross-Mot. Summ. J. at 15–16; Def.'s Mot. Summ. J. at 12; Pl.'s Reply at 11, ECF No. 16.

Unfortunately for Captain Torres, the ABCMR did not have the final say. On April 10, 2024, the Deputy Assistant Secretary of the Army overturned the ABCMR's decision to remove the reprimand from her file. *See* AR at 2. He explained his decision in one short paragraph:

> Reference the attached Army Board for Correction of Military Records Record of Proceedings in which the Board recommended granting the applicant's request. I have reviewed the evidence presented, findings, conclusions, and Board member recommendations. Based upon the misconduct leading to the General Officer

> Memorandum of Reprimand (GOMOR), the short period of time since the issuance
> of the [General Officer Memorandum of Reprimand], and the lack of evidence of
> any error or injustice, I overturn the board's recommendation. The application
> submitted by the individual concerned is denied.

*Id.* Captain Torres was notified of this decision on April 16, 2024. *Id.* at 1.

### C.    Procedural Background

On September 16, 2024, Captain Torres sued the Secretary of the Army in her official

capacity, alleging that the Deputy Assistant Secretary's decision was arbitrary and capricious in

violation of 5 U.S.C. § 706(2)(A). *See* Compl. ¶¶ 74–123. On January 31, 2025, the Defendant

filed a Motion for Summary Judgment. *See* Def.'s Mot. Summ. J. And on March 3, 2025, Captain

Torres filed a Cross-Motion for Summary Judgment. *See* Pl.'s Cross-Mot. Summ. J. These motions

are fully briefed and are ripe for review. *See* Pl.'s Opp'n, ECF No. 12; Def.'s Opp'n, ECF No. 14;

Def.'s Reply, ECF No. 15; Pl.'s Reply.

### LEGAL STANDARD

"Federal Rule of Civil Procedure 56 requires a court to grant summary judgment 'if the

movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law.'" *Pol'y & Rsch., LLC v. U.S. Dep't of Health & Hum. Servs.*, 313 F.

Supp. 3d 62, 74 (D.D.C. 2018) (quoting Fed. R. Civ. P. 56(a)). But "in APA cases, the summary

judgment standard functions slightly differently, because 'the reviewing court generally . . .

reviews the [agency's] decision as an appellate court addressing issues of law," *id.* (quoting *Henry

v. Sec'y of Treasury*, 266 F. Supp. 3d 80, 86 (D.D.C. 2017)). "In other words, summary judgment

'serves as a mechanism for deciding, as a matter of law, whether the agency action is supported'

by the record 'and otherwise consistent with the APA standard of review.'" *Henry*, 266 F. Supp.

3d at 86 (quoting *Remmie v. Mabus*, 898 F. Supp. 2d 108, 115 (D.D.C. 2012)). "Under the APA,

it is the role of the agency to resolve factual issues to arrive at a decision that is supported by the

administrative record, whereas the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 90 (D.D.C. 2006) (cleaned up).

"The APA requires a reviewing court to 'hold unlawful and set aside agency action' that is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Henry*, 266 F. Supp. 3d at 86 (quoting 5 U.S.C. § 706(2)). "An agency action is arbitrary and capricious if the agency has . . . entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Evergreen Shipping Agency (Am.) Corp. v. Fed. Maritime Comm'n*, 106 F.4th 1113, 1117 (D.C. Cir. 2024) (citing *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). "[T]he agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *State Farm*, 463 U.S. at 43 (cleaned up). And "[a] court cannot uphold agency action based on reasons or rationalizations 'other than that expressed by the agency.'" *Toledo Hosp. v. Becerra*, 621 F. Supp. 3d 13, 26 (D.D.C. 2021) (quoting *Catholic Healthcare W. v. Sebelius*, 748 F.3d 351, 354 (D.C. Cir. 2014)).

"The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *State Farm*, 463 U.S. at 43. "In the context of decisions on military records, the standard is even more deferential 'to ensure that the courts do not become a forum for appeals by every soldier dissatisfied with his or her ratings, a result that would destabilize military command and take the judiciary far afield of its area of competence.'" *Moskowitz*, 2025 WL 901241, at *4 (quoting *Cone v. Caldera*, 223 F.3d 789, 793 (D.C. Cir.

2000)); *see also Ferguson v. McHugh*, 64 F. Supp. 3d 33, 40 (D.D.C. 2014) ("Courts review such decisions under an unusually deferential application of the 'arbitrary and capricious' standard of the APA." (cleaned up)). "Accordingly, the court asks only if the Secretary's 'decisionmaking process was deficient, not whether [the] decision was correct.'" *Moskowitz*, 2025 WL 901241, at *4 (emphasis omitted) (quoting *McKinney v. Wormuth*, 5 F.4th 42, 46 (D.C. Cir. 2021) (cleaned up)). "That said, this 'broad discretion in administering the correction of military records does not obviate the APA's requirement that administrative actions be supported by reasoned decisionmaking.'" *Id.* (quoting *Code v. McCarthy*, 959 F.3d 406, 415 (D.C. Cir. 2020) (cleaned up)).

## DISCUSSION

Captain Torres argues that the Deputy Assistant Secretary's decision was arbitrary and capricious in violation of 5 U.S.C. § 706(2)(A). *See* Pl.'s Cross-Mot. Summ. J. at 19–34; Compl. ¶¶ 74–123. For the Defendant to win, "[a]ll that is required is that [her] decision 'minimally contain a rational connection between the facts found and the choice made.'" *Fuller v. Winter*, 538 F. Supp. 2d 179, 186 (D.D.C. 2008) (quoting *Frizelle v. Slater*, 111 F.3d 172, 176–77 (D.C. Cir. 1997)). But "the Court must 'examine[] whether or not [she] has considered all of the evidence before [her], and if so, if [she] has stated why evidence contrary to the final decision was 'disregarded or given less weight.'" *Id.* (quoting *Smith v. Dalton*, 927 F. Supp. 1, 4 (D.D.C. 1996)). The Deputy Assistant Secretary failed to provide such an explanation, even after the ABCMR recommended that the reprimand be removed from Captain Torres's personnel file, *see* AR at 5–20. The denial was therefore arbitrary and capricious.

The Deputy Assistant Secretary stated that he "overturn[ed] the board's recommendation" "[b]ased upon the misconduct leading to the General Officer Memorandum of Reprimand (GOMAR), the short period of time since the issuance of the GOMAR, and the lack of evidence

of any error or injustice." AR at 2. But these three grounds make it impossible for the Court to

discern why he disagreed with the ABCMR; indeed, he never even addressed any of the eight

factors relied on by the ABCMR to reach the opposite conclusion. *See* AR at 16. This was a fatal

mistake, even under the highly deferential standard applied to military personnel decisions.

*See, e.g.*, *Berry v. Esper*, 322 F. Supp. 3d 88, 91 (D.D.C. 2018) ("In the face of an eight-page

Board recommendation that provided a reasoned basis for awarding a Purple Heart, the Deputy

Assistant Secretary summarily disagreed. The Court could not grant deference to that change of

course if it tried."); *Thornton v. Wormuth*, No. 23-cv-3665, 2025 WL 27351, at *3 (D.D.C. Jan. 3,

2025) (finding the Acting Deputy Assistant Secretary arbitrarily and capriciously overturned the

ABCMR's decision where he "state[d] no particular areas of disagreement with the ABCMR's

unanimous recommendations").

  *First*, it is unclear from this explanation what "misconduct" caused the Deputy Assistant

Secretary to disagree with the ABCMR. AR at 2. In her summary judgment briefing, the Defendant

says that "[t]he Correction Board summarized this misconduct" when it stated the following:

> The evidence shows an AR 15-6 investigation revealed the applicant created a
> counterproductive work environment by failing to communicate to her Soldiers and
> setting unrealistic timelines for them to complete vague tasks. She disrespected and
> belittled her subordinates in front of others, reprised against a Soldier who made a
> complaint against her by requesting a formal meeting with the 101st Airborne
> Division Chaplain Command Team to discuss how the Soldier would not serve their
> next Chaplain well, and stated that the Soldier would not be retained in the
> Chaplaincy Branch. As a result, she was issued a [General Officer Memorandum
> of Reprimand] that was directed to be filed in her permanent file.

Def.'s Mot. Summ. J. at 19 (quoting AR at 11). But pointing to the ABCMR's description of the

misconduct is a peculiar way to explain why the Deputy Assistant Secretary disagreed with the

ABCMR's conclusion. *See Thornton*, 2025 WL 27351, at *3 ("It is not clear how the ABCMR's

20-page explanation of how it reached a *different* conclusion from the ADAS could support the

ADAS's decision, especially given the ADAS made no attempt to address the ABCMR's

reasoning."). Perhaps the Deputy Assistant Secretary weighed one or two pieces of misconduct more heavily than did the ABCMR. But without any statement to that effect, Captain Torres and the Court are left guessing. *See Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 224 (2016) ("It is not the role of the courts to speculate on reasons that might have supported an agency's decision.").

*Second*, pointing to "the short period of time since the issuance of the [reprimand]" was not sufficient on its own to explain the Deputy Assistant Secretary's disagreement with the ABCMR. AR at 2. This is not to say that the consideration of timing was impermissible. It stands to reason that the passage of time could bear on whether a continued punishment is unjust. *Cf.* Army Reg. 600-37 ¶ 6-3(b)(5) (listing the "[t]ime elapsed" as a factor to consider when deciding whether to move a reprimand to the restricted portion of the record). But the Deputy Assistant Secretary *also* had to "state[] why evidence contrary to the final decision was 'disregarded or given less weight.'" *Fuller*, 538 F. Supp. 2d at 186 (quoting *Smith*, 927 F. Supp. at 5).

To be clear, he did not have to address frivolous arguments. *See Roberts v. Geren*, 530 F. Supp. 2d 24, 36 (D.D.C. 2007) ("The Board had an obligation to respond only to those arguments that were not frivolous on their face and could affect the Board's ultimate disposition."); *see also Frizelle*, 111 F.3d at 177 ("[B]ecause the Board's decision did not respond to two of Frizelle's arguments, which do not appear frivolous on their face and could affect the Board's ultimate disposition, we conclude that the Board's ultimate decision was arbitrary."). But the Defendant does not argue that Captain Torres's arguments were all frivolous on their face and were therefore undeserving of a response. And she would be hard-pressed to take such a position considering the ABCMR sided with Captain Torres below. *Cf. Mudd v. Caldera*,

26 F. Supp. 2d 113, 120 (D.D.C. 1998) (finding a decision was arbitrary and capricious where the plaintiff "raised a non-frivolous argument that the Board apparently accepted but Assistant Secretary Lister did not address at all").

*Third*, the remark that there was a "lack of evidence of any error or injustice," AR at 2, was too conclusory, *see Dickson v. Sec'y of Def.*, 68 F.3d 1396, 1405 (D.C. Cir. 1995) ("When an agency merely parrots the language of a statute without providing an account of how it reached its results, it has not adequately explained the basis for its decision."); *Thornton*, 2025 WL 27351, at *3 ("The ADAS's boilerplate statements do not allow the Court to determine whether he examined the relevant data or whether there is a rational connection between the facts found and the choice made." (cleaned up)); *cf. Berry*, 322 F. Supp. 3d at 91 ("[The denial] provides no meaningful analysis—only a boilerplate determination 'that the facts found do not support a conclusion that [Berry's] injury met the criteria for a Purple Heart.'" (citation omitted)). The Defendant defends this conclusion by arguing that the ABCMB's "recommendation for relief 'as a matter of justice' relied, in part, on mistaken findings." Def.'s Mot. Summ. J. at 22 (citing AR at 16). But the Deputy Assistant Secretary never made this observation in his decision. *See* AR at 2. And the Court may not rely on post hoc rationalizations. *See State Farm*, 463 U.S. at 50 ("Courts may not accept . . . counsel's *post hoc* rationalizations for agency action." (citation omitted)); *see, e.g.*, *Villarreal-Dancy v. U.S. Dep't of the Air Force*, 633 F. Supp. 3d 19, 34 (D.D.C. 2022) (saying it is "unpersuaded" by an argument in part because it "is a *post hoc* rationalization not included in the Denial Order").

Ultimately, the Court is mindful of the deferential standard of review governing military decisions like this one and takes no position on whether the Army should remove the reprimand from Captain Torres's file. But the Deputy Assistant Secretary's decision-making process leaves

14

little for the Court to defer to. *See Fuller*, 538 F. Supp. 2d at 193. In these circumstances, the Court has no choice but to find the denial arbitrary and capricious. The Secretary will have an opportunity to adequately explain herself on remand.

## REMEDY

"Where an agency 'has failed . . . to explain the path it has taken, we have no choice but to remand for a reasoned explanation.'" *Dickson v. Sec'y of Def.*, 68 F.3d 1396, 1407 (D.C. Cir. 1995) (quoting *Tex Tin Corp. v. EPA*, 935 F.2d 1321, 1324 (D.C. Cir. 1991)). The Court therefore sets aside the Deputy Assistant Secretary's decision pursuant to 5 U.S.C. § 706(2) and remands this matter to the Army for further proceedings consistent with this decision. *See, e.g.*, *Berry*, 322 F. Supp. 3d at 92 (remanding to the Army after finding the Deputy Assistant Secretary's rejection of the ABCMR's recommendation was arbitrary and capricious); *Thornton*, 2025 WL 27351, at *4 (remanding to the Secretary after finding the Acting Deputy Assistant Secretary's rejection of the ABCMR's recommendation was arbitrary and capricious); *cf., e.g.*, *Villarreal-Dancy*, 633 F. Supp. 3d at 34–35 (setting aside the Principal Deputy Assistant Secretary's Denial Order overturning a decision by the Air Force Board for Correction of Military Records and remanding the matter to the Secretary of the Air Force after finding the Denial Order was arbitrary and capricious).

**CONCLUSION**

For the foregoing reasons, the Court denies the Defendant's Motion for Summary Judgment, ECF No. 10, and grants Captain Torres's Cross-Motion for Summary Judgment, ECF No. 11. The Court remands the matter to the Secretary of the Army for further proceedings consistent with this decision.

A separate order will issue.

                                       _____

                                       SPARKLE L. SOOKNANAN
                                       United States District Judge

Date:   July 14, 2025